James v. Van Horn.

---

DARWIN R. JAMES, OWNER, IMPLEADED WITH MARY E. MIDDLETON AND JOHN A. MIDDLETON, HER HUSBAND, v. JOHN VAN HORN.

1. A mechanics' lien-claim filed since January 1st, 1875, against several distinct buildings, without apportioning the claim, is amendable by Section 14 of the lien act, at any time before judgment; an amendment at the trial was properly made.

2. When a lien-claim is filed for debts incurred for both construction and reparation, the claim should distinguish the amounts of each.

3. The attorney may attest and seal the summons issued in an action on a lien-claim.

4. The failure of the county clerk to endorse upon the lien-claim the time of issuing the summons, as provided in Section 13, does not avoid the writ, when neither the defendant or third parties can be injured by the failure to endorse.

5. A failure to state the manner of service of the summons in the declaration, or to prove the same at the trial (Section 19), only affects the form of judgment against the builder, and none but the builder can object to such failure.

6. The finding, by a judge sitting as a jury, that the erection of a building had commenced when the materials for the structure had been brought upon the ground, and were mortised and prepared for erection, was not erroneous.

7. There being no evidence to show that the fifty acres, against which the judgment was rendered, was not surrounded by an enclosure, separating it from adjoining lands of the owner, Section 16 of the lien act does not apply.

In error to the Somerset Circuit Court.

In January, 1875, John Van Horn filed his claim against Mary E. Middleton and John A. Middleton, her husband, builders, and Darwin R. James, owner. Suit was brought. James alone appeared. The cause was tried without a jury, at the September Term of the Somerset Circuit, in the year 1875. Upon the trial, it appeared that the claim was, in fact and on the papers, for " erection, construction, and repairs," and was against three separate buildings—a dwelling, wagon-house, and privy—and fifty acres of land on which they stood. The work and materials were not apportioned among them. It also appeared that the summons was not sealed by the clerk, and that the time of issuing it was not endorsed on the lien-claim. The declaration did not state how the summons was served. Its service was not proven. When the plaintiff rested, the defendant moved for a non-suit. His Honor, the judge, refused to non-suit the plaintiff, and gave him leave to amend the lien-claim and declaration, by apportioning the work and materials among the said three buildings, and by endorsing on the amended

lien-claim the date of issuing summons, and holding it unnecessary to distinguish between erection, construction, and repairs, in the said lien-claim, or that the clerk should seal the summons, or that the declaration should state how it was served, or that its service should be proven after any defendant had pleaded. The defendant therefore prayed an exception, which was sealed accordingly.

The defendant James therefore proved that the premises in question were purchased by him November 20th, 1874, without notice or knowledge of the said construction, erection, or repairs of, in, or to any of the said buildings in said claim mentioned. That the work to the said wagon-house, and the said dwelling-house was repairing only, and was all done before the said defendants purchased the said premises ; that the said privy was not erected on the said premises at the time the said James purchased the same, and that he knew nothing of its proposed erection, and neither before or after the said purchase, ordered it to be erected; whereupon the defendant rested his case.

The plaintiff thereupon further proved that the materials for the erection and construction of the said privy were all purchased and taken on the said premises, and were mortised and prepared for erection before the said James purchased the said premises, and were, after the said purchase, actually used in the erection and construction of the said privy on which the said lien is claimed.

His Honor, the judge, thereupon gave it as his opinion that the claim of $28.32 apportioned to the said privy in the amended lien-claim, would be maintained against the same and the farm of fifty acres, upon which the said buildings all stand, and gave judgment accordingly, with costs ; to which said opinion of the said judge, the said defendant excepted, and an exception was sealed accordingly.

A writ of error was thereupon brought, and duly returned with a transcript of the record, upon which, in due time, errors were regularly assigned.

James v. Van Horn.

Argued at February Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, DIXON and REED.

For the plaintiff in error, *R. V. Linderbury.*

For the defendant in error, *Wm. H. Long.*

The opinion of the court was delivered by

REED, J.   The first error assigned is, that the allowance of an apportionment of the lien-claim was error.

It is insisted that the lien filed without apportionment was fatally defective.   This is true, if the buildings were on separate tracts of land.   *Morris Co. Bank* v. *Rockaway Manufacturing Co.*, 1 *C. E. Green* 150.

Assuming this to be so, although it does not appear, it is then insisted that it was not within the power of the court to permit an amendment.   Was it amendable ?

The fourteenth section of the present mechanics' lien act (*Rev., p.* 671,) provides, "That at any time before judgment on a lien-claim, a justice of the Supreme Court, on application of the claimant of such lien, and on reasonable notice to all parties interested, may order such lien-claim to be amended in matter of substance, as well as in matters of form, whenever it shall appear to him that such amendment can be justly made."

Under this section I think the court had the power to order the amendment.

The tendency of the courts in other states has been in the direction of a liberal exercise of the privilege of amending proceedings under these statutes.   Indeed, the scope of the exercise of the power conferred by statute is limited only by an injustice to either defendant or to third parties.   *Phillips on Mech. Lien,* § 426.

In this instance there were three buildings belonging to the same owner.   A lien was filed for work done upon all of them, without apportioning the amount upon each.   The vice of blending the several claims consisted in the injustice of

placing upon one house a liability for a debt incurred in erecting another.

As that fault in a lien-claim was remediless before the section permitting amendments, the whole claim failed as a lien. The clear office of this remedial power to amend could hardly be exhibited in a stronger light than in this case. By this amendment the disproportion is removed. Each building is made liable for the particular debt incurred in its erection or repair, and no injustice is done to the defendant or third party. On the other hand, a hardship in depriving the creditor of his right of lien, by reason of a technical defect in his proceeding to enforce it, is prevented.

Nor is there any ground for the insistment that because the building was commenced and the lien attached in November, 1874, and the act allowing amendments did not go into effect until January following, that therefore the amendment cannot be made.

It is true it was held by this court, in *Vreeland* v. *Bramhall*, 10 *Vroom* 1, that this act did not have a retrospective operation. If the lien-claim had been filed previous to January 1st, 1875, this would be within that case.

But the defective lien claim was not filed till after January 1st. The fact that work was commenced in November, 1874, cannot affect the question.

The injustice of allowing a defective lien-claim, filed before January 1st, to be amended, consisted in this : When a lien-claim was once filed, and manifested fatal defects, any person perceiving it had the right to regard it as unamendable, and so deal with the property upon which it purported to establish a lien upon that basis.

Intervening the commencement of the building and the filing of the lien, all parties should be held to have dealt with the property with full knowledge that there was a right of lien, and a complete method provided for its enforcement.

There would be no justice in recognizing a right in third parties to speculate on the possibility of the claimant losing

his right by subsequent errors of procedure under the then existing law.

When the lien-claim was once filed, all parties had the right to regard it with reference to the law existing at that time. If it was so faulty that the lien was lost and the vice was cureless, it was then right to so regard it. If, at the time, however, the fault by the law was remediable, they would be charged with notice of that, and the subsequent exercise of the power of amendment would work no injustice. I think there was no error in the allowance of the amendment.

*Secondly.* It is assigned for error, that the court held that it was unnecessary to distinguish between erection, construction and repairs.

The right of lien for repairs is given in a separate section (8) of the act, and there is a provision applicable to liens for repairs, which is not applicable to liens for construction. This is the proviso: " That it shall not be valid against a *bona fide* purchaser or mortgagee before said lien is filed in the office of the clerk of the county."

It is perceived, therefore, that while the cost for an addition to a house may be a valid lien, the cost of an extension in height, or interior alteration made at the same time, may not be enforceable against the property.

Any purchaser or mortgagee of the property, who became such subsequent to the commencement of the work and before lien filed, is, by the statute, fixed with a notice of the commencement of the construction of the building or addition, but his knowledge of the beginning of the reparation is a matter for proof.

The want of such notice constitutes a complete defence to that part of the account which is for repairs.

This might make the contest entirely an ascertainment of what portion of the claim was for construction and what for reparation. It seems that, for the purpose of affording the defendant the information required for an intelligent defence,

the amount of each of these elements should be indicated in the claim.

It is also highly essential that the record should show what part of the claim recovered represents construction, and what portion reparation. A judgment upon a lien for either, or both, is conclusive, in any collateral proceeding, as to the amount of the debt or debts.

The time at which the debts became liens must be established in such proceeding by extrinsic testimony ; and by virtue of the proviso relative to liens for reparation, the establishment of the time in each, as we have already observed, differs. Upon proof of the time of the commencement of the construction, the attachment of the lien for the debt incurred for that purpose is fixed at that time, and the lien of any subsequent encumbrancer is subjected to it. But the discovery of the time of the attachment of the lien for reparation may involve another inquiry, as to whether a person acquiring a lien between the time of the beginning such reparation and the filing of the lien claim, had notice of such work at the time of acquiring his lien.

I think the lien-claim should show the claims for each distinctly, and the verdict should contain distinct findings for each.

Unless this is done, it is apparent that, in any collateral contest between the judgment creditor or a purchaser under the special *fi. fa.* and an intervening mortgagee, the action of the jury in adjusting the amounts in the original trial has no conclusiveness. The verdict upon which judgment is entered may have been, so far as the proceedings show, for a claim for construction, or for reparation, or for both. If for both, then what amount for each does not appear.

In the collateral proceeding by an encumbrancer, the amount of each must be adjusted *de novo*. The folly of purchasing under a special *fi. fa.* upon such a judgment, where there is a subsequent encumbrancer, would be almost as striking as if the judgment upon any lien-claim had. no.

conclusive force whatever.    I think, therefore, that the claims should be distinct, and the findings separate.

I think, in this case, for work done concurrently, there is no difficulty in enforcing both classes of claims in a single suit.    The rule which forbids the union of causes of action, upon which different judgments must be entered, presents, I think, no difficulty.    The form of the judgment upon the record in both cases is the same.

The statute only giving a different retroactive force to each, to be determined by extrinsic testimony.

I think, in ruling that it was unnecessary to distinguish between these claims, there was error.

*Third.* It is urged that there was error in the ruling that the summons need not be sealed by the clerk.

The summons was sealed by the attorney.

The practice in this state for the attorney to test and seal summons is very old and well established.

It is a very rare occurrence for a clerk, unless in those instances where the statute expressly requires it, as in the instance of writs of attachment, to seal these writs *propriâ manu.*

The attorney is supposed to do it as the agent of the clerk. *Updike* v. *Tenbroeck,* 3 *Vroom* 105.

The eighteenth section of the lien act provides, that the summons in suits on mechanics' lien shall be directed, tested and made returnable, and may be served and returned, in the same manner as other writs of summons.    There is certainly nothing in this which requires, in suits on lien-claims, a change in the universal practice of sealing and testing summons.

Nor is there anything in the thirteenth section—any express or implied direction—that the clerk shall seal by his own hand, and not by the hand of an attorney.

I think the ruling upon this point was right.

*Fourth.* It is urged that the failure of the clerk to endorse the time of issuing the summons on the lien-claim, as directed

James v. Van Horn.

by Section 13, was unamendable, and the allowance of such amendment was error.

This provision in the lien act is analogous to that in the attachment act, (*Rev., p.* 43, § 5,) which directs the clerk to enter in a book to be kept for that purpose, the names of the plaintiff and defendant, the amount of claim, and the time of issuing and sealing the writ. Both of these provisions, it is perceived, are for the purpose of providing information for third parties—in the case of the issuing of a writ of attachment, that all parties may have the facility of ascertaining from the records that a lien is put upon the property of a certain person, for a certain amount, at a certain time ; in the case of a mechanics' lien, that all parties may know, by looking for the endorsement on the lien-claim, at the expiration of the year from the date of the last work done or materials furnished, whether a summons has or has not issued, and the lien placed in process of enforcement, or abandoned. In the case of *Morrel* v. *Buckley, Spenc.* 669, it was held 'by this court, that the provision requiring the clerk to enter the time of issuing a writ of attachment, &c., was merely directory ; that the omission of the clerk to perform a duty for the benefit of purchasers and others dealing with defendant in attachment, would not vitiate a writ rightfully issued.

It is not necessary, in this case, to assert that this rule should be applied in its full scope, to the construction of this provision of the lien act in all instances. In this case, however, it appears on the face of the proceedings, that no party can be prejudiced by the original failure to make the endorsement, or by the subsequent amendment of the lien-claim. The presence or absence of the endorsement can mislead no one until the time within which a summons can be issued has expired. It had not expired when this endorsement was made and judgment was entered.

The work was done in November, 1874, and the trial at which the amendment was made was had in September, 1875.

Judgment was then entered on the lien-claim. It thus affirmatively appears that neither defendant, purchaser, or encumbrancer can have been affected by the failure to endorse on the lien-claim the time of the issuance of the writ. I think there was no error in allowing the endorsement to be made at the time of the trial. I think there would have been no error in entering judgment at that time, without such endorsement being made at all.

*Fifth.* It is assigned for error, that the judge held the declaration sufficient, without its containing a recital that the builder and owner were served as directed by Section 19 of the act. If this was a material averment as to the owner, I think the objection should have been raised by demurrer. After plea interposed, it was too late to raise the question on the trial, and the verdict would cure the defect on error.

*Sixth.* It is also insisted that the judge erred in not requiring, at the trial, proof of the manner of service of the summons. The determination of this question involves the inquiry whether the manner of service was a material element in the plaintiff's case.

What is the object of the statute in requiring the manner of service to be stated in the declaration? There are two modes of service provided for by Section 18 of the act. One is styled *actual*, and the other *legal* service.

Whether the service of the summons was effected in either one or the other of these methods, is important only in determining the form of the judgment against the builder.

By the provisions of the nineteenth section, "In case judgment be given for the plaintiff, it shall be entered against the builder when he was *actually* served with the summons, generally, and with costs, as in other cases; and when only *legal* service of the summons has been made, judgment against the owner, and also against the builder, shall be specially for the debts and costs to be made of the building and lands in the declaration described." It is perceived that it is the builder only who is affected by the manner of service of the summons.

If the service was actual, then judgment is entered against him generally. If the service was legal, then only specially. The judgment against the owner is special in either case. He is in no way affected by the manner of service. But the owner is the only party who appeared at the trial. The builder was absent, and, of course, raised no question and took no exception.

I think there is nothing in the assignment of error in this point, by the owner.

*Seventh.* It is urged that the judge erred in holding that the claim of $28.32 apportioned to the privy in the amended lien-claim, was a lien upon the same.

This is urged upon the ground that the defendant became the owner of the property upon which it was erected, before the privy was commenced.

If this is so, the lien must fall. But if it was commenced before his purchase, and its erection continued thereafter, we can see no error in holding the lien valid. *Gordon* v. *Torrey,* 2 *McCarter* 112.

When was the construction of the privy commenced? James purchased on November 20th, 1874. It was proven that the materials for the erection of this structure were then all purchased and taken on the premises, and were mortised and prepared for erection.

The commencement of a building is the doing of some act upon the ground upon which the building is to be erected, and in pursuance of a design to erect, the result of which act should make known to a person viewing the premises, from observation alone, that the erection of a building upon that lot or tract of land has been commenced.

In *Jacobus* v. *Mutual Benefit Life Insurance Co.,* 12 *C. E. Green* 604, work done in breaking the ground for a cellar was held a commencement of the building, because it must have changed the appearance of the ground so as to show the purpose of the work.

Under this rule, I do not think it is possible to say that there is no evidence to support the finding of the judge sitting

also as a jury, that from the materials lying upon the ground and mortised for erection, a person viewing the premises would be apprised at once that a building was going up. Unless we can say there is no evidence to sustain the finding, we cannot reverse for error.

*Lastly.* It is assigned for error that the judge erred in giving judgment against fifty acres of land.

What the curtilage included, was held in *Edwards* v. *Derrickson*, 5 *Dutcher* 468, to be a question of fact to be determined by the jury.

Since the decision in that case, the act of 1863 was passed, the third section of which is now the sixteenth section of the revised act. *Rev., p.* 671. Under this section, where there is no separation of the lot upon which the building stands from adjoining lands of the same owner, then, if the land is mapped for building lots, the curtilage shall include the building lot so mapped, upon which the building is erected, and, if not mapped, the curtilage shall not exceed half an acre.

It does not appear that the facts were found, or indisputably appeared in this case, to bring it within the operation of this section. If this tract of fifty acres was surrounded by an enclosure, separating it from adjoining lands of the defendant, it is, I think, clear that the provisions of the section are not applicable. Whether it was or was not so separated was a question for the judge sitting as a jury, and there is nothing in the case from which, upon error, we can say, as a matter of law, that the finding was erroneous.

As there was error in the ruling as to the subject matter of the second assignment, judgment must be reversed.